2022 IL App (1st) 211402-U

FIFTH DIVISION
SEPTEMBER 30, 2022

No. 1-21-1402

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* The Marriage of: | ) | Appeal from the |
| | ) | Circuit Court of |
| JERALYN BRODERICK, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 10 D 330095 |
| and | ) | |
| | ) | |
| RICHARD BRODERICK, | ) | Honorable |
| | ) | Myron Mackoff, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Connors and Mitchell concurred in the judgment.

**ORDER**

*Held:* The circuit court erred by not determining the full effect of a prior order which contained a condition precedent which clearly conflicts with the latter order entered by the circuit court.

¶ 1     On January 27, 2020, respondent-appellant, Richard Broderick filed a petition in the circuit court of Cook County against his former wife, petitioner-appellee, Jeralyn Broderick[1] for

---

[1]For clarity, since Richard Broderick has remarried, we will refer to the parties as well as their daughter by their first names.

college contributions for their daughter, Rachel Broderick. On October 1, 2021, the circuit court ordered Richard to make a contribution for the majority of Rachel's college expenses. On October 29, 2021, Richard filed his notice of appeal. On appeal, he argues that the trial court erred by: (1) requiring him to contribute to Rachel's college expenses when he has no access to her grades; (2) making the payments retroactive to a date before he filed his petition for college contribution against Jeralyn in contravention of established law; and (3) requiring him to make payments toward college expenses beyond four years of post-secondary education. For the following reasons, we reverse the judgment of the circuit court of Cook County and remand this matter for further proceedings.

¶ 2                             BACKGROUND

¶ 3        Jeralyn and Richard were married on October 30, 1993, and had four children together. On January 29, 2010, Jeralyn filed a petition for dissolution of marriage. On May 27, 2011, the circuit court entered its judgment dissolving the marriage and incorporating the parties' negotiated marital settlement agreement (MSA) into the court's final judgment. At the time of the dissolution of marriage judgment, the parties' children were aged 16, 12, 10, and 5 years old. Article IV of the MSA, titled "Post-High School Education Expenses," states, the following:

> "Each party shall contribute towards the children's post high school education expenses, commensurate with his or her financial ability, when due, the education expenses of a college, university, or vocational school education ('post-high school education') for the minor children. The extent of the parties' respective obligations hereunder shall be determined in accordance with the provisions of Section 513 of the Illinois Marriage and Dissolution of Marriage Act, or by any applicable statutory provision in force at the time in question."

Educational expenses, as defined in the MSA, are "all charges incurred for: tuition, room, board, and lodging; fees, assessments, transportation, *** fraternity, and sorority costs, *** and other charges customarily levied by the college, university, or [vocational] school in question." Pursuant to the MSA, the obligation to contribute to college expenses continues until the child in question receives a four-year undergraduate degree or the child's discontinuance of his or her educational pursuit, whichever occurs first.

¶ 4        Prior to the parties' first child, Alex Broderick, going to college, Jeralyn and Richard each filed a petition for contribution to college expenses. On April 17, 2013, the trial court entered an order stating that Richard was to contribute 45% toward Alex's college costs; Jeralyn was to contribute 35%; and Alex was to contribute 20%.

¶ 5        Jeralyn subsequently filed a petition to modify child support regarding all four children. On January 7, 2016, the trial court entered a written order on Jeralyn's petition. In paragraph 11 of the January 7, 2016, written order, the court stated:

> "As long as either parent is contributing to college expenses, both parents shall be provided copies of each child's grade reports upon the child's receipt of same. If it is not provided to either parent, then future payments of college expenses will not occur until the grades are provided. Neither parent shall instruct a child to not produce his or her grade reports."

Prior to the court's order, the MSA incorporated in the final dissolution judgment did not require that the child attending college and receiving financial help from Richard and Jeralyn, grant access to his or her grades in order for the parents to pay the child's expenses. The January 7, 2016, order also stated that the contribution towards the college expenses for the parties' second-born child,

Lauren Broderick, was to be made by Richard, Jeralyn, and Lauren, at 50%, 30%, and 20%, respectively.

¶ 6        On January 27, 2020, Richard filed a petition for college contribution against Jeralyn for the parties' third-born child, Rachel.  It is that petition and her college expenses, which are the subject of this appeal. On March 4, 2020, Jeralyn filed a response and a cross-petition for college contribution from Richard regarding Rachel's college expenses. On December 9, 2020, the trial court conducted a hearing on both petitions.

¶ 7        Richard testified that Rachel is attending the University of Iowa. He estimated that the University of Iowa costs approximately $43,000 to $45,000 a year in total. Richard explained that Rachel earns a merit-based scholarship of $13,600 a year, and he paid 55% of Rachel's remaining college expenses, which included a monthly stipend, for her first two semesters of college, beginning in the fall of 2019 and concluding in the spring of 2020. In fall 2020, he increased his amount of contribution to 70% of Rachel's college expenses in an attempt to settle the parties' dispute regarding their individual contribution obligation. In order to pay for Rachel's educational expenses, during the three semesters in which he contributed, Richard took out Parent Plus loans. He testified that he had not made any payments for Rachel's Spring 2021 semester college expenses.

¶ 8        Richard is a practicing neurosurgeon employed by Advocate Medical Group. A financial affidavit, which was admitted as an exhibit, showed that, at the time of the hearing, his monthly gross income was $47,916 and his monthly net income was $25,203.

¶ 9        Richard stated that he saw Rachel's grades at the end of her freshman year and did not currently have access to her grades. He testified that access was sporadic and "[t]he university allows [] students to grant access to their [grades] information, and unfortunately

4

Rachel has [] granted [him] access and then withdrawn the granting of.[access]. So sometimes [he had] access, sometimes [he didn't]." He spoke to Rachel about accessing her grades, but the last time he checked, he still did not have access.

¶ 10    The hearing on the case was continued to May 10, 2021. On December 9, 2020, prior to the continuation of the hearing, Richard inquired of the court how much he should pay for Rachel's Spring 2021 semester college costs. The trial court stated, "Nothing. You pay nothing until we get this resolved because there may be many, many things that need to be reimbursed to different people, and I can't commit you to anything."

¶ 11    At the May 10, 2021, continuation of the hearing, Richard testified that while he still had not seen Rachel's grades since the second semester of her freshman year, he thought his daughter was making good grades, at least above a B average, as she had done in high school.

¶ 12    Jeralyn testified that she is a nurse for JourneyCare Hospice and had been in that position for two months at the time of the hearing. Also, at the time of the hearing, she was earning $61,000 per year. Prior to working as a hospice nurse, she made $34,000 per year with JourneyCare as a referral coordinator.

¶ 13    Jeralyn also testified that Rachel had a 3.74 Grade Point Average (GPA) at the time of the hearing and was receiving a merit-based scholarship, which awards her $13,300 per year. Rachel's GPA has never dropped below a 3.0. Jeralyn stated that it is Rachel who chooses who has access to her grades. Jeralyn was unsure of whether Rachel could revoke parental access during the middle of a semester. Jeralyn said that she does not control who has access to Rachel's grades.

¶ 14    According to Jeralyn, in Fall 2019, Rachel's first semester of college, Jeralyn paid $7,400 toward Rachel's college expenses. Jeralyn stated that she contributed $6,544 towards

Rachel's college expenses in Spring 2020, Rachel's second semester. Jeralyn then paid approximately $8,8000 toward Rachel's college expenses in Fall 2020. Jeralyn said that she gave Rachel $2,984 for Spring 2021, Rachel's fourth semester. Rachel's scholarship covered $6,650 that semester and Rachel obtained loans for the maximum amount of $6,500. Jeralyn obtained Parent Plus loans of approximately $900 to cover the remaining balance. Jeralyn provided little to no documentation to support the payments she testified that she made. Judge Jeanne Cleveland Bernstein, who was presiding at the time, stated that she found some of Jeralyn's testimony incredible. The hearing was then continued to August 31, 2021.

¶ 15　　　　However, prior to the August 31, 2021, hearing date, Judge Cleveland Bernstein, who had handled the case since the filing of the petitions and the prior two hearings, retired. Judge Cleveland Bernstein was replaced by Judge Myron Mackoff. On August 31, 2021, Judge Mackoff presided over the final hearing on the petitions.

¶ 16　　　　At the hearing on August 31, 2021, the trial court heard testimony regarding Rachel's college expenses and the parties' income since the May 10, 2021, hearing date. Richard testified that since the last hearing, he had not made any payments toward Rachel's college expenses in accordance with Judge Cleveland Bernstein's directive in December 2020. Specifically, the judge ordered that Richard not pay anything toward Rachel's college expenses until the matter of what was owed by each party was resolved. He additionally stated that he had not seen any billing statements from the University of Iowa and the last payment which he had made was in the first semester of Rachel's second year of college.

¶ 17　　　　Jeralyn testified again, explaining that she contributed approximately $7,000 to Rachel's college expenses in Spring of 2021 and Rachel contributed $14,936. She stated that Rachel was changing her major from physical therapy to nursing. The change required Rachel to

6

attend an extra semester of school. Regarding the fall 2021 semester, Jeralyn said that Rachel had a tuition bill of approximately $16,000. Rachel's $6,650 scholarship would be applied to the bill, leaving about $9,400 due. Rachel's housing cost was approximately $4,460 for the fall 2021 semester. At the time of the August 31, 2021, hearing, neither Rachel nor Jeralyn had paid anything toward the fall 2021 semester because they were awaiting the outcome of the August 31, 2021, hearing.

¶ 18       On October 1, 2021, the trial court issued a written order on both petitions. In the order, the court stated among other things: "[r]egardless of whether [Richard's] Surgical Neurology Associates business is wrapping up, [Richard] out-earns [Jeralyn] by nearly a factor of 10." The court relying on the Illinois Marriage and Dissolution of Marriage Act (Act) and using the University of Illinois Urbana-Champaign as a template, calculated Rachel's college costs to be $31,000 per year.[2] The court ordered that Richard contribute $31,000 to Rachel's college costs. That is the maximum amount under the Act. The court's order required Richard to contribute that amount to Rachel's tuition, fees, books, and room and board annually going forward as well as retroactively to her first semester of college. After deducting the $31,000 from the actual cost of Rachel's college obligations, the court ordered that the parties deduct any scholarships or grants Rachel has earned. The remaining expenses were to be paid by Jeralyn and Rachel at a split of 80% and 20%, respectively. The court also found that Richard was required to contribute $17,500 to Rachel's additional semester, which resulted from her change of majors. Regarding additional expenses such as transportation, Richard, Jeralyn, and Rachel were to pay them at an equal one-third split. The trial court's order was silent regarding Rachel's obligation,

---

[2] Section 513 of the Act states that college tuition and fees paid cannot exceed the amount of in-state tuition and fees paid by a student at the University of Illinois at Urbana-Champaign for the same academic year. See 750 ILCS 5/513(d)(1) (West 2020).

under the existing 2016 order, to grant her parents, specifically her father, access to her grades. The court's order also did not address whether lack of access to her grades would negate Richard's obligation to contribute as is clearly stated in the existing 2016 order. On October 29, 2021, Richard filed his notice of appeal.

¶ 19                                          ANALYSIS

¶ 20        We note that we have jurisdiction to consider this matter, as Richard filed a timely notice of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 21        On appeal, Richard argues that the trial court erred by: (1) requiring him to contribute to Rachel's college expenses when he has no access to her grades; (2) mandating that payments made by Richard be retroactive to a date before he filed his petition for contribution against Jeralyn; and (3) requiring him to make payments toward Rachel's college expenses beyond four years of college education.

¶ 22        Richard first argues that the trial court erred by requiring him to contribute to Rachel's college expenses when he has no access to her grades. In support, Richard cites the trial court's existing January 7, 2016, order which states, "[a]s long as either parent is contributing to college expenses, both parents shall be provided copies of each child's grade reports upon the child's receipt of same. If it is not provided to either parent, then future payments of college expenses will not occur until the grades are provided." He urges that, since he has not seen or been granted access to Rachel's grades since the end of her freshman year, he is not obligated to make any further contributions. Thus, he contends the trial court erred when it ordered him to make contributions toward Rachel's college expenses without requiring Rachel to produce her grades as clearly spelled out in the January 2016 order.

8

¶ 23     Richard's argument in its simplest terms is that the court's October 2021 order is null and void, since it is clearly in conflict with an existing order which is clear and unambiguous regarding what is required of Rachel in order for Richard to be obligated to pay her college expenses.

¶ 24     Richard's argument requires us to determine whether the access to grades provision of the January 7, 2016, order is still in effect. This is a question of law, which we review *de novo*. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 29.

¶ 25     While the trial court's October 1, 2021, order clarified the parties' obligations regarding Rachel's college expenses, it *did not address* the issue which underpins Richard's appeal. Specifically, whether Rachel is required to allow Richard access to her grades as a condition precedent to Richard's obligation to make payments towards her college expenses. Further, the record reflects that this was clearly a concern of Judge Cleveland Bernstein, who initially presided over the petitions and most of the hearings in this case. The October 1, 2021, order entered by the trial court, did not vacate nor even address the condition which is clearly and unambiguously set forth in the court's January 7, 2016, order. Specifically requiring Rachel to allow both parents access to her grades and failing to do so would nullify each parent's payment obligation. Thus, paragraph 11 of the court's January 7, 2016, order, requiring Rachel to present both parents with a copy of her grades before they are required to make *any* contribution to her college expenses, remains in effect. Thus, the January 7, 2016, order makes it clear that granting access to her grades is a condition precedent to her parents making payments towards Rachel's college expenses.

¶ 26     Not only did the trial court ignore the condition precedent, it also failed to address what, if any, effect Rachel's failure to produce her grades will have on any continuing obligation

9

by Richard to pay her college expenses. The record reflects that this condition was an important and integral part of the court's January 2016 order. Indeed, the record also reflects that Judge Cleveland Bernstein focused on that provision throughout the pendency of the case. Thus, the trial court's failure to even mention the provision in its October 2021 ruling is baffling.

¶ 27        Therefore, we reverse the trial court's October 1, 2021, order and remand the case to the trial court to allow the court to review and modify its judgment in accordance with this order. In light of our ruling on this seminal issue, we will not address the remaining issues raised by Richard.

¶ 28                                CONCLUSION

¶ 29        For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the case to the circuit court to review and modify its judgment consistent with this order and established law.

¶ 30        Reversed and remanded with instructions.